# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEARCH AND SOCIAL MEDIA PARTNERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1120-LPS-CJB |
| | ) | |
| FACEBOOK, INC.; INSTAGRAM, INC, and INSTAGRAM, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| LOCATION BASED SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-283-LPS |
| | ) | |
| SONY ELECTRONICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| LOCATION BASED SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1424-LPS-CJB |
| | ) | |
| FANTASTIC FOX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| LOCATION BASED SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1425-LPS-CJB |
| | ) |
| MAPILLARY INC., | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| MOAEC TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-375-LPS |
| | ) |
| DEEZER S.A. and DEEZER INC., | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| MOAEC TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-376-LPS |
| | ) |
| SOUNDCLOUD LIMITED and SOUNDCLOUD, INC., | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| MOAEC TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-377-LPS |
| | ) |
| SPOTIFY USA INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM ORDER

At Wilmington this **13th** day of February, 2019:

The Court having heard oral argument in all of the above-listed cases on February 8, 2019, **IT IS HEREBY ORDERED** that:

1. Search and Social Media Partners, LLC's motion for reconsideration (C.A. No. 17-1120 D.I. 25) is **DENIED**.

2. Sony Electronics, Inc.'s motion to dismiss (C.A. No. 18-283 D.I. 11) is **GRANTED** as to claim 6 of the patent-in-suit.

3. Fantastic Fox, Inc.'s motion to dismiss (C.A. No. 18-1424 D.I. 8) is **GRANTED** as to claim 6 of the patent-in-suit.

4. Mapillary Inc.'s motion to dismiss (C.A. No. 18-1425 D.I. 11) is **GRANTED** as to claim 6 of the patent-in-suit.

5. Deezer S.A.'s motion to dismiss (C.A. No. 18-375 D.I. 16) is **GRANTED** with respect to lack of patentable subject matter and **DENIED AS MOOT** in all other respects. MOAEC Technologies, LLC's motion to amend (C.A. No. 18-375 D.I. 48) is **GRANTED** for the limited purpose of completing the record.

6. Soundcloud Limited and Soundcloud, Inc.'s motion to dismiss (C.A. No. 18-376 D.I. 11) is **GRANTED** with respect to lack of patentable subject matter and **DENIED AS MOOT** in all other respects. MOAEC Technologies, LLC's motion to amend (C.A. No. 18-376 D.I. 42) is **GRANTED** for the limited purpose of completing the record.

7. Spotify USA Inc.'s motion to dismiss (C.A. No. 18-377 D.I. 13) is **GRANTED** with respect to lack of patentable subject matter and **DENIED AS MOOT** in all other respects.

MOAEC Technologies, LLC's motion to amend (C.A. No. 18-377 D.I. 49) is **GRANTED** for the limited purpose of completing the record.

All of the foregoing motions were argued at the February 8 hearing and the rulings provided above were all announced from the bench at the conclusion of the hearing, as follows:

> I'm going to rule on all of the motions that were argued today. I will not be issuing written opinions in any of the cases on the motions that were argued today, but I want to emphasize before I get into the rulings that I hope nobody will make any mistake about this. We have followed, I assure you, a full and thorough process before I made my decisions.
>
> Obviously, there was full briefing on all the motions, then there was the checklist[1] letters which we carefully considered. There was extensive oral argument today. There were two judges that looked at everything.[2] And there were a lot of law clerks over the course of the day. You may have counted, there have been five law clerks that have helped Judge Burke and myself on these motions.
>
> And we spent a lot of time together, not just today but leading up to today. So really the only thing that I haven't done is take the time to write an opinion, but I have taken the time with the assistance of all of these folks to try to organize my thoughts and articulate the basis for my decisions. So even though I am ruling from the bench and not writing an opinion, I hope it won't be mistakenly thought that we haven't put the time and the effort and the thought into reaching these decisions.
>
> One of the reasons that I am going ahead and just ruling on these motions is related to one of the points I have tried to make this morning. This is an effort to deal with the fact that because there are so many 101 motions out there, it follows understandably that we're getting so many 101 opinions from the Federal Circuit. My team here did some research and by our rough calculations

---

[1]These letters were filed by each party appearing at the February 8 hearing, in compliance with the "Section 101 Pre-Hearing Checklist," which is attached as Appendix A to this Order.

[2]Judge Stark and Magistrate Judge Burke jointly presided throughout the argument.

over the last two years, the Federal Circuit has issued roughly two opinions each month dealing with 101 issues, and that doesn't count Rule 36 affirmances, so that actually understates the amount of authority and guidance we get from the Federal Circuit on 101 issues.

So they're issuing opinions on 101 at a rate of around twice a month. And between Judge Burke and myself, it turns out we're issuing opinions at the rate of about one a month, but it is taking us on average two months after argument to get our opinion out, and we usually do have argument. So if I did the math correctly, I think that means on average about four new Federal Circuit opinions are coming out in that lag time between argument and written decision, and that is challenging in terms of subsequent authority, et cetera.

So I don't want that to happen on the motions that were argued today. I have decided what to do, and I'm going to just tell you.

I am not going to read into the record my understanding of Section 101 law. I have a legal standard[s] section that I include[,] sometimes with a small amount of modification[,] in essentially all of my Section 101 decisions. I hereby adopt the entirety of that legal standard[s] section. . . . [S]pecifically. I'm [adopting] by reference the discussion . . . of 101 law that can be found in my September 28th 2018 opinion in the *SSMP* case.[3]

All right. Let's get to the cases.

So first is the *MOAEC* cases.[4] That is what was argued first this morning.

Defendants Deezer, SoundCloud, and Spotify moved under Rule 12(b)(6) to dismiss complaints filed by plaintiff MOAEC. My ruling today relates only to [D]efendants' contention that the

---

[3]*See Search and Social Media Partners, LLC v. Facebook, Inc.*, 2018 WL 4674572, at *2-5 (D. Del. Sept. 28, 2018).

[4]C.A. Nos. 18-375, 18-376, 18-377.

3

claims of the patent, of the patent-in-suit, it's the '539 patent[,[5]] . . . claim patent ineligible subject matter under Section 101. The defendants had originally challenged the sufficiency of the pleadings under *Iqbal* and *Twombly*,[6] but they have withdrawn that portion of their challenge.

Applying the law as I understand it, and having carefully reviewed the entire record and heard oral argument, I agree with the defendants. The asserted claims are directed to patent ineligible subject matter, so I will be granting the motions in the *MOAEC* cases.

I start with claim 1 of the '539 patent. [At] *Alice*[[7]] Step 1, I find that claim 1 is directed to the abstract idea of accessing music by category. The crux of claim 1 is the ability to use a graphical user interface or GUI . . . to display a list of music that matches a certain category. The use of a flag to find music in a certain category, whether by genre, artist, or ownership[,] is an abstract idea.

In this respect, the Court agrees with the defendants' comparison of the present case to the *Affinity Labs v. Amazon*[[8]]case of the Federal Circuit in 2016.

MOAEC's argument that claim 1 satisfies Step 1 because it recites specific hardware lacks merit. [A] claim that recites hardware may nevertheless be directed to an abstract idea. For example, the claims in *Alice* recited hardware, such as a data processing system, including a data storage unit and a computer.

MOAEC also argues that the claim[] satisf[ies] Step 1 because it solves a problem that is unique to digitized music, namely, copyright infringement and unauthorized use of music.

---

[5]U.S. Patent No. 6,232,539.

[6]*Ashcroft v. Iqbal*, 556 U.S. 663 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[7]*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

[8]*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1267 n.2 (Fed. Cir. 2016).

4

MOAEC's argument, though, lacks support in the intrinsic record.

The ownership category flag, which seems to be where the plaintiff finds this concept in the patent, didn't appear in the claims until after the reexamination. The specification says very little about the ownership category flag. The specification states that an ownership category flag allows users to tell which songs are on the user's computer. That is what the term is doing in the claims.

The claim limitation added in the reexam says, "wherein one of the category flags comprises an ownership category flag that indicates which music selections from the list of all music selections are currently resident in the storage device." The specification does not, however, describe an ownership category flag as providing the sort of access control mechanism MOAEC suggests.

The specification does describe a method for locking songs to prevent unauthorized playback, but this is achieved using a serial number and an encryption key, not an ownership category flag.

It may be that plaintiff thinks that preventing copyright infringement is a benefit of [the invention]. . . . [B]ut [if] that purported benefit of the invention is captured in the claims through the proper construction of some disputed claim term, . . . plaintiff has not said so[,] neither in the briefs nor in the checklist in which I specifically asked for the parties to identify any claim terms they thought were in dispute and how those disputes might affect the outcome on the 101 motion. Nor has plaintiff proposed a construction of any claim term that would accomplish what the plaintiff says this claim is about.

I sensed today, maybe the plaintiff is suggesting there is a dispute about what ownership means in the context of the claim, but if so, this is too little/too late. The plaintiff has not even offered a construction of "ownership." Instead, plaintiff expressly took the view in the checklist response that claim construction is not necessary before resolving the Rule 12 motion and said that to the extent I'm even considering claim construction, I should [adopt] the claim construction of "category flag" that was adopted in the earlier *MOAEC Inc.* case[. . . .]

I hereby do so for purposes of the motion. I have adopted the construction of that other court of "category flag,"[9] but that adoption doesn't help the plaintiff. The term construed there . . . was "category flag" and that construction doesn't reference ownership or copyright infringement.

I find that the plaintiff has waived the opportunities I have provided to make the claim construction argument it seems belatedly to suggest that it may want to make.

Moreover, even if [the plaintiff] were making that argument, there appears to be a lack of intrinsic support for a construction of the "ownership category flag" term, or even of the "ownership" term[,] that would get the concepts of protection against copyright infringement into the claims. There is no specification support, and I don't even think there is any prosecution history support even in the reexamination history where this limitation was added to the claims. I don't see any support in any of that for a construction of "ownership" or "ownership category flag" that would bring these concepts, the purported invention[,] into the claims. I would not, even for purposes of a Rule 12 motion, assume an implausible claim construction.

And so we don't even have a proposed construction. If we did, my sense is it would be implausible and would lack intrinsic support.

Moving to Step 2, I find that claim 1 lacks an inventive concept. The patent makes clear that the technical components recited are conventional, well known, and generic. It repeatedly makes that clear

As in *Affinity Labs*[, the claims'] functional limitations [–] here, the use of category flags to look up music [–] cannot supply the inventive concept.

---

[9]In *MOAEC, Inc. v. Pandora Media*, 2008 WL 4500704 (W.D. Wis. Sept. 30, 2008), the Court construed "category flag" as an "identifier associated with a media/data selection, where each identifier represents a predetermined characteristic of the selection, such as title, artist, music style, etc."

MOAEC's analogy to the *BASCOM*[10] decision fails because here, unlike in *BASCOM*, the specification establishes that the recited technical components and their combination are conventional.

Even assuming that the ownership category flag itself is novel, which seems suggested arguably at least by the prosecution history of the reexam, the claim still fails Step 2 because the ownership category flag is directed to the abstract idea, so it can't supply the inventive concept.

The Court further concludes that there is nothing in the combination of the overwhelmingly conventional components that is itself non-conventional or novel and, importantly, nothing in the patent says that the combination is novel.

MOAEC's pleadings do not create a factual issue that would preclude dismissal. Under *Twombly*, *Iqbal*, [and] *Berkheimer*[,11] pleadings, as to [the inventiveness] of the claims are not entitled to the assumption of truth where the[y] are conclusory or contradict[] [the] intrinsic evidence. . . . Once I subtract such allegations from the complaint, MOAEC's factual contentions taken as true do not provide an inventive concept[,] for the reasons discussed.

Therefore, claim 1 of the '539 patent is invalid because it claims subject matter ineligible under Section 101.

Let me briefly talk about the other claims that are at issue in the motion. MOAEC admits that claims 1, 6, and 15 of the '539 patent are representative. MOAEC also says I can just address claims 1 and 15. And then MOAEC says, as I[] understand it, that claim 15 can't survive if claim 1 doesn't. And claim 1 has not survived, so it follows that claim 15 and all the rest of the asserted claims do not survive.

Plaintiff never made any articulable argument as to why any claim should survive if claim 1 does not.

---

[10]*BASCOM Global Internet Svcs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

[11]*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).

For what it is worth, claim 15 is directed to the computer readable medium, but it contains essentially the same limitations as claim 1. Claim 15 also contains category markers, but I fail to see how this makes a difference, and the plaintiff doesn't argue that it does.

Just briefly, there has been mention of claim 6. It depends from claim 1. It relates to the use of a play list that can be used to play music in a predetermined order. I find that the use of a play list to organize music in the context of this patent is an abstract idea, and nothing in claim 6 remedies the deficiencies I have identified in claim 1.

Having reviewed the rest of the '539 patent claims that are at issue in the motion, including all of the asserted claims, which are 1, 2, 6, 7, 9, 15, 16, 19 to 21, [and] 24, and also having reviewed the non-asserted claims, I find that none of them are patentable under Section 101. I further find that plaintiff has waived the opportunity to identify and argue specific additional grounds for finding the eligibility of any claims other than claim 1 by not articulating any such grounds in its briefing or today.

Coming to the motion for leave to amend, I will grant the motion for leave to amend as MOAEC requests because defendants do not oppose it. Both sides agree that for purposes of [an] appeal, which may be coming, it would [be] helpful to have a more complete record by filing the amended complaint. So simply for that purpose alone, I'm granting the motion for leave to file an amended complaint.

Nothing in the amended complaint cures the deficiencies that I identified with respect to Section 101 . . . . And plaintiff concedes that the amended complaint does nothing to address those deficiencies.

In fact, in my view, the proposed amendment is futile, and I would deny it but for the fact that the parties have agreed that I should grant it solely for the purposes of completing the record.

. . . .

Turning now to the second set of cases that were argued,

8

the *Location Based* cases or the *LBS* cases.[12]

The defendants here, Sony Electronics, Fantastic Fox, and Mapillary[,] have each moved to dismiss the complaints filed by Location Based Services, LBS, for failure to state a claim under Rule 12(b)(6) on the basis of Section 101. Having conducted the same thorough and careful analysis that I have already described, I find that I agree with the defendants and hereby find that claim 6 of the '733 patent[13] claims ineligible subject matter. I will grant defendants' motions to dismiss.

My decision concerns only claim 6. Only claim 6 is asserted against defendants Fantastic Fox and Mapillary; and plaintiff made clear today that it is asserting only claim 6 against Sony as well.

I recognize that Sony's motion is directed to all of the claims of the '733 patent and that Sony is asking for essentially a declaratory judgment of non-patentability of the unasserted claims. It may be that I should or even have to address those additional claims, but I do not have to do so today, and I am not doing so today. I am hopeful that I won't have to do so at all, but with you all as well, I'm ordering that you meet and confer and submit a joint status report a week from today, and in it address among anything else you wish, whether I do have to go on and resolve the patentability of claims other than claim 6.

With respect to claim 6, turning to Step 1 of *Alice*, I find that the asserted claim is directed to the abstract idea of collection, organization, manipulation, and display of data. The Court ha[s] considered the arguments plaintiff has made against this conclusion[,] both in its briefing and in argument today[,] and none of these arguments has merit.

Claim 6 may be likened to pinning pictures on a map or keeping them in a chronological photo album. Even the claimed metadata is a computerized version of writing the location and/or time on the back of a photograph. At bottom, the claim is just a collection, organization, manipulation, and display of data, and

---

[12]C.A. Nos. 18-283, 18-1424, 18-1425.

[13]U.S. Patent No. 8,311,733.

9

does not rise above the realm of abstraction.

The claim in this way is comparable to the ones considered in the *Move Inc. v Real Estate Alliance* case by the Federal Circuit.[14] There, the claim was directed to a method of searching real estate property by identifying a region, selecting an inner region, zooming in on the selected region, and cross referencing a real estate database to pictorially display available properties in the region. The Federal Circuit found there, as I find here, that the focus of the claim is not on any technological advancement but rather on the performance of an abstract idea for which computers are invoked merely as a tool.

Plaintiff[']s attempts to liken this case to *Enfish*[15] are unpersuasive. In *Enfish*, the invention of a self-referencing data table improved the functioning of the computer itself by enabling faster searching, more efficient storage of data, and better flexibility in configuring the database. Here, claim 6 merely uses a known table with known table entries to display pictures. Further, in *Enfish*, the specification contained an explanation about how the claimed table was an improvement on computer technology. There is no similar explanation here, nor is the purported improvement captured in the claims.

At Step 2 of *Alice*, the asserted claim lacks an inventive concept. Plaintiff does not allege that the patent is the first to claim metadata tables or to associate location, time[,] or image history data to digital photographs. Although plaintiff argued in its briefing that the inventive concept resides in the patents organizing pictures by both location and time, claim 6 is not so limited. It recites organization by location, time, and/or image history.

The patent repeatedly observes that the purported invention can be implemented with generic computer components. It does not teach any other way. Nor does it teach any non-conventional or novel ordered combination.

Today, at argument, plaintiff emphasized above all that the patent is about the data store configurable to store a table. The

---

[14]*Move, Inc. v. Real Estate Alliance, Ltd.*, 721 Fed. Appx. 950 (Fed. Cir. 2018).

[15]*Enfish v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

10

specification fails to discuss those specifics that were discussed today in argument. Today's argument neither rises above abstraction, nor amounts to an inventive step.

. . . I think I understand plaintiff's argument, but I find that it is untethered to the patent that is in front of me. The patent itself does not identify the problem that plaintiff's counsel describes, nor does the patent itself describe how that problem is solved. Even at this early stage in this case, I can only find that plaintiff has failed to persuade me that these claims are directed to the improvement of computer functionality.

Based on my conclusions, any amendment would be futile. So I'm denying today's request for leave to amend the complaint. Therefore, I grant . . . Sony, Fantastic Fox, and Mapillary's motion[s] to dismiss.

That leaves the third case, *Search and Social* or *SSMP*. Here, the motion is the plaintiff[] SSMP's motion for reconsideration. This motion is denied.

The motion is brought pursuant to Local Rule 7.1.5[,] which indicates that a motion for reconsideration should be granted only sparingly. As is well settled, these types of motions are granted only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties[,] or made an error not of reasoning but of apprehension. Generally, a motion for reconsideration is granted only if the movant can show at least one of the following: That there . . . has been an intervening change in controlling law, the availability of new evidence not available when the Court made its decision, or a need to correct a clear error of law or fact to prevent manifest injustice.

Plaintiff has failed to persuade me that any of these circumstances are present.

The motion is directed to the portion of my September 28th opinion that granted defendants' motion to dismiss the asserted claims of the '828 patent[16] for lack of patentable subject matter. My memorandum opinion concluded that the asserted claims of the '828 patent are directed to the abstract idea of providing news

---

[16]U.S. Patent No. 8,620,828.

11

items to a subscriber who is part of a group. At Step 2 of *Alice*, I concluded that providing news via a news ticker on a computer, in the context of a social network environment without more, does not amount to [a] patent eligible application of an abstract idea.

The specification, as I've pointed out, acknowledges that the relevant hardware components and software were known at the time of the invention.

In its motion for reconsideration, SSMP first asserts that a recent change in controlling law confirms that the claims covering user interfaces are not directed to abstract ideas. For this contention, SSMP points principally to *Core Wireless*[17] and *Data Engine*[18], the two decisions from the Federal Circuit.

Initially, I'll note *Core Wireless* was issued many months, I believe eight months[,] before the Court issued [its] September 28th opinion. Although that opinion, from the Federal Circuit, came out after briefing on the motion in front of me was closed, it was permissible and available for either party to direct the Court's attention to *Core Wireless*, for instance, through a notice of supplemental authority, but the plaintiff notably did not do so.

The availability of *Core Wireless* before the Court ruled on the earlier motion means that *Core Wireless* cannot be a change in the controlling law of the type contemplated by our local rule. The same goes for *Aatrix*[19] and *Berkheimer*[,] which are also bases for the motion for reconsideration. Those two decisions were also issued by the Federal Circuit many months before this Court issued its opinion on the earlier motion. Indeed, both *Aatrix* and *Berkheimer* are cited in the decision for which plaintiffs are seeking reconsideration today. So *Aatrix* and *Berkheimer*, too, cannot be a change in the controlling law simply due to their timing.

Moreover, putting aside the timing question, none of the four cases on which the plaintiff relies are actually a change in the

---

[17]*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018).

[18]*Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018).

[19]*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354 (Fed. Cir. 2018).

law. They do not constitute a change in controlling Section 101 law. *Core Wireless* and *Data Engine* are simply applications of *Alice*. *Aatrix* and *Berkheimer* perhaps place new emphasis on the reality that *Alice* Step 2 can involve factual disputes, but that too is not a change in the law.

I do want to talk just briefly a little more about *Data Engine*. That one does[,] I understand[,] at least have the virtue of coming after this Court's decision was issued on the underlying motion, so it's not untimely in that sense but it's not a change in the controlling law. Instead, *Data Engine*, like *Core Wireless*, is an application of *Alice*, and both of those cases involved specifications that taught that the claimed inventions were specific solutions to then existing technological problems. And the claims found in those cases to be . . . patent eligible recited these specific improvements.

Here, by contrast, the written description does not itself refer to a social network and only briefly discusses a ticker as an optional feature that can be added on to a tool bar. And the claims recite generic components described at a very high level of generality.

I have considered SSMP's remaining argument[s] and find that they, too, lack merit. I don't see a factual dispute that could be resolved in a manner supporting a conclusion that these claims survive *Alice* Step 2. I say this having looked again at paragraph[s] 13 to 23 of the complaint[,] where plaintiffs say there is a basis for a factual dispute that could be resolved in their favor if we had further proceedings on *Alice* Step 2.

SSMP also contends that I erred in not considering the materials attached to the answering brief on the underlying motion. Those materials, of course, are not incorporated in the complaint, nor cited in it. Beyond that, I just, I don't think it was error [–] and certainly not clear error leading to manifest injustice [–] for me not to give further consideration to those attachments to the answering brief.

In any case, I have looked again at those materials. Of course, it is undisputed they're all extrinsic. None of those materials directly relate[s] to the patent-in-suit. And given my analysis of the patent-in-suit, none of this extrinsic evidence I find

can cure the deficiencies that are intrinsic to the patent.

SSMP also makes an argument about the recent IPR petition. The IPR petition I'm told does not present an anticipation argument but instead points to multiple references in seeking to invalidate the patent-in-suit. I don't see how this in any way detracts from Court's analysis or creates a meritorious basis for reconsideration of my earlier decision. Even if it were true that defendants were conceding that the patent-in-suit is not invalid due to anticipation, and I don't understand them to actually be conceding that, . . . it would not follow that the patent necessarily survives Section 101 scrutiny, nor would it even necessarily follow that the patent survives Step 2 of *Alice*.

Finally, I am denying SSMP's request to file an amended complaint addressing the purported deficiencies relating to the '828 patents. SSMP does not attach any such proposed amended complaint to its motion, and it is not clear to me that allowing SSMP to amend its complaint at this point . . . would be fair or would be timely or not unduly prejudicial, but putting that all aside, it would be futile in light of the conclusions I reached here. An amendment can not overcome what is lacking in the intrinsic record.

Since SSMP has failed to show that reconsideration is warranted, this motion is denied.

. . .

So I have spoken for an awful long time. You might now wonder whether I would have been better off writing opinions, but I'll say just a few more things . . . .

As you will have noticed, I did find that all three of the patents that were at issue today turned out to be not patent eligible. And I have done that in all three cases at the Rule 12 stage. I would caution against reading anything into that. To me, that is the luck of the draw. That is what happened. . . . [O]riginally this hearing had five separate sets of cases and more patents. Two of those cases went away. It turns out that the three cases that got scheduled today happen to involve patents that, when I looked carefully at them, I thought could not survive Rule 101 analysis under current law.

It absolutely does not follow that you should expect that I am going to invalidate . . . every patent I see on a 101 motion. I'm sure the same goes for Judge Burke. We look at each case on its own, applying the law to the facts and circumstances, considering of course all the arguments made[,] and do our very best. That is what I have done. That is what I will continue to do.

It may be that I try to do another 101 day like this. If I do, and if any of you are involved in it, you should not assume that I have made some decision that these patents that I am scheduling for these days are going to be invalidated. That is just the luck of the draw and what was up on my docket for argument at this time. So I would again caution reading against any larger message in any of that.

                                                                
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT

# APPENDIX A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Section 101 Pre-Hearing Checklist
(November 2018)

Chief District Judge Leonard P. Stark
Magistrate Judge Christopher J. Burke

The Court will be hearing oral argument on a motion to dismiss and/or motion for judgment on the pleadings which seeks a ruling that one or more claims of the patent(s)-in-suit is not eligible for patenting due to its subject matter. To assist the Court in preparing for the hearing, each party shall, no later than three (3) weeks prior to the hearing, file a letter brief, not to exceed three (3) pages, responding to the following:

1. (a) What claim(s) is/are representative?

   (b) For which claim(s) must the Court determine eligibility?

2. (a) Is claim construction necessary before patentability can be decided?

   (b) If so, which term(s) must be construed?

   © What are your proposed constructions for the terms you contend must be construed?

3. If you are contending that factual dispute(s) should cause the Court to deny the motion, identify with specificity such factual dispute(s).

4. (a) Are there materials other than the complaint/answer and the intrinsic patent record (i.e., the patent and prosecution history) that you contend the Court should consider in evaluating the motion?

   (b) If so, identify those materials and the basis on which the Court may properly consider them at this stage.

5. What Supreme Court or Federal Circuit case is this case most like? That is, if the Court is to analogize the claims at issue in the motion to claims that have previously been found to be patent (in)eligible by a higher court, which case provides the best analogy?

6. Why should/shouldn't the Court deny the motion without prejudice to renew at a later stage of this litigation?